ELMER BOHANAN ET AL.

v.

MAJOR S. BOHANAN.

</div>

MISTAKE IN A DEED—POWER OF COURT TO CORRECT.—B., to induce his son to relinquish a contemplated removal to Nebraska, told him if he would remain he would purchase for him a forty-acre tract, which he accordingly did, and the son made improvements upon the house and farm, and put in crops, but without actually moving upon the premises. By mistake, as claimed by complainants, B. was named as grantee in the deed instead of his son. The son died shortly after, and on a bill filed by his heirs to correct mistake in the deed, *held*, that the evidence tending strongly to show the intention of the parties that the land should be conveyed to the son in fee, a court of equity would correct the mistake and order a conveyance of the fee to the heirs of the son.

ERROR to the Circuit Court of Peoria county; the Hon. J. W. COCHRAN, Judge, presiding. Opinion filed May 2, 1879.

Mr. J. K. COOPER and Mr. N. E. WORTHINGTON, for plaintiff in error; on the power and duty of a court of equity to correct a mistake, cited Broadwell v. Broadwell, 1 Gilm. 599; Ruffner v. McConnell, 17 Ill. 217; Story's Eq. Jur. § 161; Kenselbrach v. Livingston, 4 Johns. Ch. 145; Hunt v. Rousmaniere, 1 Pet. 13; Rider v. Powell, 4 Abb.; Hunter v. Bilyeu, 30 Ill. 368;

Clearwater v. Kimler, 43 Ill. 272; Mills v. Lockwood, 42 Ill. 111; Briegel v. Moeller, 82 Ill. 257; Moore v. Munn, 69 Ill. 591; McLennan v. Johnson, 60 Ill. 306; Long v. Hartwell, 34 N. J. 116; Goltra v. Sanasack, 53 Ill. 456; West v. Madison Agr'l Board, 82 Ill. 205; Hunt v. Frazier, 6 Jones' Eq. 90; Clayton v. Freet, 100 Ohio, 544; Ex. Bank v. Russell, 50 No. 531; Wheeler v. Kirtland, 23 N. J. Eq. 13.

Part performance will take the case out of the Statute of Frauds: Hawkins v. Hunt, 14 Ill. 42; Ramsay v. Liston, 25 Ill. 114; Deniston v. Hoagland, 67 Ill. 265; Adkinson v. Tanner, 68 Ill. 247; Parkhurst v. Van Courtland, 14 Johns. 15; Freeman v. Freeman, 43 N. Y. 34; Annam v. Merritt, 13 Conn. 479; Farrar v. Patton, 20 Mo. 81; Peckham v. Berkham, 8 R. I. 17; Wood v. Thornley, 58 Ill. 464.

Delivery of or entry into possession with consent of the vendor, in pursuance of the contract, will entitle the vendee to specific performance: 1 Leading Cas. in Eq. 1045; Eaton v. Whitaker, 18 Conn. 222; Tilton v. Tilton, 9 N. H. 386; Allen's Est. 1 Watts & Serg. 383; Pugh v. Good, 1 Watts & Serg. 56; Johnson v. Glancy, 4 Blackf. 94; Haugemont v. Pomeroy, 7 C. E. Green, 119.

So if a child enters into possession and makes improvements under a parol promise from the father to convey: Kurtz v. Hibner, 55 Ill. 514.

Making valuable improvements is a good consideration for the promise: Bright v. Bright, 41 Ill. 97; Lessee of Tyler v. Eckhart, 1 Binn. 378; Ford v. Ellingwood, 3 Met. (Ky.) 359; King's Heirs v. Thompson, 9 Pet. 204; Young v. Glendening, 6 Watts, 509; Wood v. Thornley, 58 Ill. 464.

A parol gift followed by acts or expenditures by the donee which render a revocation of the gift unjust or inequitable, will be upheld and enforced: 1 Leading Cas. in Eq. 1047; Sace v. Henry, 39 Ind. 414; Galbreath v. Galbreath, 1 Kan. 402; Syler v. Eckardt, 5 Binn. 308; Young v. Glendenning, 6 Watts, 309; Mahon v. Baker, 2 Casey, 519; Atkinson v. Jackson, 8 Ind. 30; Renker v. Abell, 8 B. Mon. 566.

A contract not obligatory when made, may be enforced at the suit of one who has changed his position for the worse on

account of the offer: Lansing v. Cole, 3 Green Ch. 228; France v. France, 4 Halst. 650; Young v. Paul, 2 Stockt. ch. 402; Vesy v. Sevy, 13 How, 345; Adams' Eq. 86; Old Colony R. R. Co. v. Evans, 6 Gray, 26.

Promise to deed if grantee will improve, when condition is complied with, will compel specific performance: Perkins v. Hadsell, 50 Ill. 216.

Time is not of the essence of the contract, unless expressly so stipulated: Snyder v. Spaulding, 57 Ill. 480; Dasel v. Jordan, 104 Mass. 407; 2 Lead. Cas. in Eq. 1112.

A recovery may be had notwithstanding a failure to comply within the time fixed, unless it was intended to act as a condition precedent and avoid the contract if not fulfilled: Martin v. Lamb, 7 T. Rep. 5; Roach v. Dickinson, 9 Gratt. 156; 2 Smith's Lead. Cas. 23.

Mr. GEORGE PUTERBAUGH, for defendant in error; that the allegations and proof must correspond, cited Taylor v. Merrill, 55 Ill. 52; Crank v. Trumble, 66 Ill. 428.

A resulting trust is not founded on a contract: Stephenson v. Thompson, 13 Ill. 186; Holmes v. Holmes, 44 Ill. 168; Williams v. Brown, 14 Ill. 201; Reeve v. Straw, 14 Ill. 97; Loomis v. Loomis, 28 Ill. 454; 4 Kent Com. 305; Perry v. McHenry, 13 Ill. 227; Fleming v. McHale, 47 Ill. 282; Remington v. Campbell, 60 Ill. 516; Walter v. Klock, 55 Ill. 362.

A resulting trust can only arise at the time of the conveyance, and from the fact that money has been paid by one and conveyance made to another: Alexander v. Tams, 13 Ill. 221; Rogers v. Murray, 3 Paige, 398; Perry v. McHenry, 13 Ill. 227; Greene v. Cook, 29 Ill. 186; Bruce v. Roney, 18 Ill. 67; Lear v. Choteau, 23 Ill. 39; Sheldon v. Harding, 44 Ill. 68; Lantry v. Lantry, 51 Ill. 458.

Evidence to sustain a resulting trust must be clear and satisfactory: Mahoney v. Mahoney, 65 Ill. 406; Wilson v. McDowell, 78 Ill. 514.

Verbal understandings between the parties will not create a trust: Allmon v. Pigg, 82 Ill. 149; Rogers v. Simmons, 55 Ill. 76.

A voluntary agreement for the creation of a trust will not be binding so long as it remains executory: Padfield v. Padfield, 68 Ill. 210; Same case, 72 Ill. 326; Perry on Torts, § 98.

Relief from a mistake in fact will only be granted upon clear and satisfactory proof: Ruffner v. McConnel, 17 Ill. 217; Hunter v. Bilyeu, 30 Ill. 228; Selby v. Geies, 12 Ill. 69; Broadwell v. Broadwell, 1 Gilm. 599; Miner v. Hess, 47 Ill. 170; Moore v. Munn, 69 Ill. 591; Mills v. Lockwood, 42 Ill. 111.

Relief will not be granted from mistakes in the intention of only one of the parties: Ruffner v. McConnel, 17 Ill. 217; Sutherland v. Sutherland, 69 Ill. 481; Wilson v. Byers, 77 Ill. 76; Emory v. Mohler, 69 Ill. 221; Frye on Specific Performance, § 505.

To justify reformation of an instrument on the ground of mistake, the evidence must be clear and satisfactory: Shay v. Pettes, 35 Ill. 360; McDonald v. Starkey, 42 Ill. 442; Palmer v. Converse, 60 Ill. 313; Cleary v. Babcock, 41 Ill. 271; Goltra v. Sanasack, 53 Ill. 456; Emory v. Mohler, 69 Ill. 221; Magnusson v. Johnson, 73 Ill. 156; Owen v. Blake, 44 Ill. 135; Price v. Karnes, 59 Ill. 276; Remington v. Campbell, 60 Ill. 516.

Even had Bohanan done everything but formally deliver the deed, the *locus pœnitentiœ* would remain, and a court would not enforce a delivery: Hoig v. Adrian College, 83 Ill. 267.

To enforce a verbal agreement to convey land, the proof must be clear and strong: Bailey v. Edmunds, 64 Ill. 125; Allen v. Webb, 64 Ill. 342; Hartwell v. Black, 48 Ill. 301; Gosse v. Jones, 73 Ill. 508.

A purchaser must have done everything on his part before he can ask a court to compel a conveyance: Cronk v. Trumble, 66 Ill. 428; McCabe v. Crosier, 69 Ill. 501; Mix v. Balduc, 78 Ill. 215; Phelps v. Ill. Cent. R. R. Co. 63 Ill. 468; Kimball v. Tooke, 70 Ill. 553; Brink v. Steadman, 70 Ill. 241; Walker v. Douglas, 70 Ill. 445.

Where conditions are not performed within five months after the time stipulated, without any excuse therefor, a specific performance will be precluded: Mix v. Balduc, 78 Ill. 215; Hedenberg v. Jones, 73 Ill. 149.

Specific performance is in the discretion of the court, and will not be decreed as a matter of course: Bowman v. Cunningham, 78 Ill. 48; McCabe v. Crosier, 69 Ill. 501; Fish v. Leser, 69 Ill. 394; Phelps v. Ill. Cent. R. R. Co. 63 Ill. 468; Lear v. Choteau, 23 Ill. 39; Alexander v. Hoffman, 70 Ill. 114; Ralls v. Ralls, 82 Ill. 243; Iglehart v. Vail, 73 Ill. 63; Gosse v. Jones, 73 Ill. 508; Proudfoot v. Wightman, 78 Ill. 553; Roby v. Cossitt, 78 Ill. 638; Taylor v. Merrill, 55 Ill. 52; Sutherland v. Parkins, 75 Ill. 338.

Upon the question of a gift: Cranz v. Kroger, 22 Ill. 74; Pope v. Dodson, 58 Ill. 360; Walton v. Walton, 70 Ill. 142; Wadhams v. Gay, 73 Ill. 415; Badgley v. Votrain, 68 Ill. 25; Hoig v. Adrian College, 83 Ill. 267.

The parol agreement was within the Statute of Frauds: Perry v. McHenry, 13 Ill. 227; Fleming v. Carter, 70 Ill. 286; Magnusson v. Johnson, 73 Ill. 156; Blount v. Tomlin, 27 Ill. 93; Updike v. Armstrong, 3 Scam. 564; Stevens v. Wheeler, 25 Ill. 300; Thornton v. Heirs of Henry, 2 Scam. 219; Shirley v. Spencer, 4 Gilm. 583; Laird v. Allen, 82 Ill. 43; Mason v. Bair, 33 Ill. 196; Keys v. Test, 33 Ill. 316.

Possession, to take the case out of the statute, must refer to the contract relied upon: Story's Eq. Jur. § 762; Wood v. Thornley, 58 Ill. 464; Holmes v. Holmes, 44 Ill. 168; Peckham v. Berkham, 8 R. I. 17.

Payment of the purchase money is not sufficient to take the case out of the statute: Temple v. Johnson, 71 Ill. 13; Cronk v. Trumble, 66 Ill. 428; Story's Eq. Jur. § 760.

Possession must be accompanied by improvements and expenditure in consequence of the promise: Bright v. Bright, 41 Ill. 97; Kurtz v. Hibner, 55 Ill. 514; Wood v. Thornley, 58 Ill. 464.

The agreement could not be performed within a year, and hence was within the Statute of Frauds: Olt v. Lohnas, 19 Ill. 576; Wilson v. McDowell, 78 Ill. 514; Comstock v. Ward, 22 Ill. 248; Warner v. Hale, 65 Ill. 395; Curtis v. Sage, 35 Ill. 22; Wheeler v. Frankenthal, 78 Ill. 124.

LELAND, J. The questions of fact in this case have been so thoroughly and exhaustively argued, that we could but repeat

Bohanan et al. v. Bohanan.

what has been so well said if we were to give a detailed statement of all the circumstances tending to prove the conclusions of fact at which we have arrived.

. Major S. Bohanan and his wife, and their son, James W. Bohanan, and his wife, were occupants of a dwelling house on the farm of the father, near Peoria. The farm was cultivated by the son, who was to account for one-half the proceeds as rent. For some reason, probably because the relations between the two females were so inharmonious as to render the joint occupancy unpleasant, James was disposed to seek relief from his supposed or real annoyances by emigrating to Nebraska. If he went, Hovenden, the father of his wife, promised to furnish him with a thousand dollars to start him in Nebraska. The father of James then agreed that if James would give up his contemplated removal and remain at home, he would purchase for him a forty-acre tract of land adjoining the home-farm and separated by the road only. So far all agree. There is, however, this difference between the parties to the suit: The father insists that James was to have only the remainder expectant upon the termination of a life estate in the father, and that James was to move on to the land, and during the life of the father account for one-half the products of the home-farm and of the forty. The complainants, who are the children of James, who was killed in October, 1872, insist that their father was to have the fee simple, and that he was not to pay any rent for the forty, but was to have what was raised on that as his own, though as to the home-farm, he was to account to his father for the one-half of the products. James gave up going West, and the forty-acre tract was purchased by his father for $2,000. The owners of the tract thus purchased, which was in February, 1871, asked $2,500 . for the land, but finally agreed, if permitted to keep possession a year, to take $2,000, and gave a bond for a deed, dated February 25th, 1871, the deed to be made March 1st, 1872, and a deed was made bearing date February 19th, 1872, though not acknowledged by some of the grantors, who were minors, until they became of age afterwards. The name of the father, Major S. Bohanan, was inserted as purchaser both in the bond and in the deed—the father says

intentionally—the grandchildren, complainants, say by accident and mistake of the scrivener Emery, who wrote them.

The grandfather, though he admits that the writings should have been so made as to create a right to the rents during his own life, with the remainder expectant after the termination of his life, in his son, claims that the actual moving on to the forty by the son, was a condition precedent to the son having any interest conveyed to him. He concedes in his evidence that if the son had moved on to the forty in the spring of 1872, to use his own language, "I would then give him a writing it should be his at my death." The grantors or sellers of the land vacated and surrendered the possession in the spring of 1872, and James cultivated the land, and papered and painted, and made some other repairs on the house, and improvements on the land. He had, by the permission of the then owners, done some fall plowing in 1871, but no crop of small grain was put in, or if it were, it was plowed up the next spring, and the land planted with corn. And here is another controversy or circumstance affecting the merits of the controversy. There was some hay cut on the forty. The grandchildren claim that James had it all, and the grandfather claims that James kept half and gave him half. We think the weight of the evidence is that James was on the land, claiming all the crops—not the one-half only—and that he appropriated all the hay to his own use. Unfortunately, before the corn crop was gathered, James was injured by a threshing machine, and died in October.

After the death of his son, the father claimed half the corn. The relations between him and his son's widow being unfriendly, she went home to her father with her children, the complainants. The old gentleman kept half the corn, and the other half was administered upon as assets of the estate of the deceased son. The forty acre tract was not in the inventory. As the son at the time of his death had made arrangements to move into the house on the forty-acre tract, and would have done so in a short time if he had lived, and as he was in the actual possession of it, raising crops, repairing fences, fixing up the house, making gates, putting a pump in the well, as

his own, etc., we are not disposed to consider the mere fact that death arrested him in his course before he actually moved into the house, as any valid reason why complainants should be denied the relief asked for.

The only real point of difference then, is this: Complainants claim that their father was to have a full title to the land. The defendant, their grandfather, claims that he was to have the rents for life, and the son the remainder expectant, subject to such life use, or life estate.

A great many authorities are cited to show that a court of equity can, where the evidence is strong enough, correct mistakes in the description of land in deeds, and also in the names of grantees, but as this is so well known among lawyers and judges, we do not deem it necessary to cite them all. Where the mistake claimed is in the description, the grantor has usually a deep interest in the case. When it is, as in this case, as to who ought to have been named grantee, the grantor is usually a disinterested spectator of the controversy.

We think the evidence in this case is strong enough to show that the name intended to have been inserted in the bond and in the deed, was that of "James W." the son, and not "Major S." the father. The father has repeatedly so stated, and also that the land was his son's. On several occasions he has asked to have the correction made by erasing the "Major S." and inserting "James W." He requested the scrivener Emery to do so, who informed him that as the deed had been acknowledged, it would not be proper. Mrs. Standeven, one of the grantors, says that when she took the deed to him, he said it was wrong, and that he would go to Emery and have him change the name "Major S." to "James W." The evidence of the intention that the son should have the fee simple, and of the mistake in the deed is so clear and strong, that we have no doubt a case for the interposition of a court of equity to correct it, is made out. It is true that the land was a gift from the father to the son, but the son having given up going west, and taking with him the one thousand dollars from his wife's father, and also having taken possession of the given land, and expended money in improvements thereon as his own, though

not to a large amount in value, makes the case one in which the mistake so clearly proved ought to be corrected in equity. We select a few of the many cases cited in the brief of plaintiffs in error. West v. Madison Agricultural Board, 82 Ill. 206; Hunt v. Frazier, 6 Jones, Eq. (N. C.) 90; Clayton v. Frost, 100 Ohio, N. S. 544; Moore v. Munn, 69 Ill. 591; Ex. Bank v. Russell, 50 Mo. 531; Wheeler v. Kirtland, 23 N. J. Eq. Reports, 13; Bright v. Bright, 41 Ill. 97; Leading Cases in Equity; notes to Lester v. Foxcroft, vol. 1, pt. 2, page 1047.

It may often be difficult to determine where the line is between slight and temporary improvements for the tenant's own use, and those which are permanent and valuable. The present case, however, is not one for a conveyance under a parol gift, where the son could not be restored to his former position, but rather for the purpose of correcting the mistake in a deed, where the son and not the father should have been named as the grantee. In this case, however, the son cannot be restored to the position in which he would have been if he had taken his father-in-law's offered $1000, and invested the amount in Nebraska land, instead of going on to the forty-acre tract, and expending money on it to improve it as his own, and not for his mere temporary convenience as a tenant. Without considering the matter at any greater length, we think the decree of the court below should be reversed, and a conveyance of the fee subject to dower decreed to be made to correct the mistake, unless upon another hearing the evidence should be materially different.

<div align="right">Reversed and remanded.</div>